1   CROWELL & MORING LLP
    Gregory D. Call (CSB No. 120483, gcall@crowell.com)
2   Beatrice B. Nguyen (CSB No. 172961, bbnguyen@crowell.com)
    Suzanne E. Rode (CSB No. 253830, srode@crowell.com)
3   275 Battery Street, 23rd Floor
    San Francisco, CA  94111
4   Telephone: (415) 986-2800
    Facsimile: (415) 986-2827

5   BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
6   Fred Bartlit, Jr. (fred.bartlit@bartlit-beck.com)
    Karma Giulianelli (CSB No. 184175, karma.giulianelli@bartlit-beck.com)
7   Lester Houtz (lester.houtz@bartlit-beck.com)
    Bryan Leach (bryan.leach@bartlit-beck.com)
8   1899 Wynkoop Street, Suite 800
    Denver, CO 80202
9   Telephone:  (303) 592-3100
    Facsimile:  (303) 592-3140

10  BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
    Mark E. Ferguson (mark.ferguson@bartlit-beck.com)
11  Mark Ouweleen (mark.ouweleen@bartlit-beck.com)
    54 West Hubbard Street
12  Chicago, IL 60610
    Telephone:  (312) 494-4400
13  Facsimile:  (312) 494-4440

14  Attorneys for Plaintiff Hewlett-Packard Company

15              UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

18  HEWLETT-PACKARD COMPANY,          Case No. 10 CV 5577 SI

19          Plaintiff,                **COMPLAINT FOR DAMAGES AND
                                      INJUNCTIVE RELIEF**
20      v.
                                      (1) VIOLATION OF THE SHERMAN ACT, 15
21  EPSON IMAGING DEVICES             U.S.C. § 1
    CORPORATION and EPSON
22  ELECTRONICS AMERICA, INC.,        (2) VIOLATION OF THE CALIFORNIA
                                      CARTWRIGHT ACT, CAL. BUS. & PROF.
23          Defendants.               CODE §§ 16700 ET SEQ.

24                                    (3) VIOLATION OF THE CALIFORNIA
                                      UNFAIR COMPETITION LAW, CAL. BUS.
                                      PROF. & CODE §§ 17200 ET SEQ.
25
                                      (4) VIOLATION OF THE TEXAS FREE
26                                    ENTERPRISE AND ANTITRUST ACT OF 1983,
                                      TEX. BUS. & COM. CODE §§15.01 ET SEQ.

27                                    **DEMAND FOR JURY TRIAL**

28                                    **PUBLIC REDACTED VERSION**

CROWELL
& MORING LLP                          COMPLAINT FOR DAMAGES
ATTORNEYS AT LAW                      AND INJUNCTIVE RELIEF;
                                      CASE NO. 10 CV 5577 SI

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION..................................................................................................... 1

II.  JURISDICTION AND VENUE ............................................................................. 2

III.  PARTIES................................................................................................................. 6

    A.  Plaintiff.......................................................................................................... 6

    B.  Defendants..................................................................................................... 7

    C.  Agents and Co-Conspirators ......................................................................... 8

IV.  FACTUAL ALLEGATIONS.................................................................................. 9

    A.  Defendants And Their Co-Conspirators Engaged In Price-Fixing Of TFT-LCD Panels In The United States And Abroad. ........................................................................ 9

    B.  Defendants And Their Co-Conspirators Specifically Targeted HP As A Victim Of Their Price-Fixing Conspiracy. ........................................................................ 12

        1.  Defendants And Their Co-Conspirators Negotiated And Reached Agreements With HP In The United States To Sell TFT-LCD Panels At Artificially Inflated Prices. .... 12

        2.  Defendants And Their Co-Conspirators Coordinated And Reached Agreement With Competitors In The United States On The Prices And Quantities Of TFT-LCD Panels Sold To HP. ...................................................................................... 13

    C.  Defendants And Their Co-Conspirators Also Engaged In Conspiratorial Conduct With Competitors Abroad To Coordinate And Carry Out Their Price-Fixing Conspiracy In The United States. ......................................................................................... 15

    D.  Defendants And Their Co-Conspirators Have Been Charged With And Have Pleaded Guilty To Participating In Price-Fixing Of TFT-LCD Panels And TFT-LCD Products In The United States......................................................................................... 19

    E.  As A Result Of Defendants' And Their Co-Conspirators' Price-Fixing Conspiracy, HP Has Suffered Damages............................................................................. 20

    F.  HP Is Entitled To Seek Damages For Purchases Made More Than Four Years Before The Filing Of This Complaint Because Defendants And Their Co-Conspirators Took Affirmative Steps To Conceal Their Price-Fixing Conspiracy........................................... 21

V.  FIRST CAUSE OF ACTION (VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1)........................................................................................... 22

VI.  SECOND CAUSE OF ACTION (VIOLATION OF THE CALIFORNIA CARTWRIGHT ACT,  CAL. BUS. & PROF. CODE §§ 16700 ET SEQ.).......................... 24

VII.  THIRD CAUSE OF ACTION  (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,  CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.) ........................ 26

VIII. FOURTH CAUSE OF ACTION (VIOLATION OF THE TEXAS FREE ENTERPRISE AND ANTITRUST ACT,  TEX. BUS. & COM. CODE §§ 15.01 ET SEQ.) ..................... 27

CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

IX.   PRAYER FOR RELIEF..................................................................... 29

X.    DEMAND FOR JURY TRIAL......................................................... 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

1           Plaintiff Hewlett-Packard Company ("HP") brings this action against defendants Epson

2   Imaging Devices Corporation and Epson Electronics America, Inc. (collectively, "Defendants").

3   HP alleges as follows:

## I.     INTRODUCTION

5       1.     HP brings this action to recover damages against Defendants who, together with

6   their co-conspirators, control most of the production and sale of thin film transistor liquid crystal

7   display panels ("TFT-LCD Panels") sold in the United States and elsewhere.

8       2.     Defendants and their co-conspirators illegally conspired, combined, and agreed to

9   fix, raise, maintain, and stabilize the prices of TFT-LCD Panels and to restrict the output of TFT-

10   LCD Panels from at least January 1, 1996 through at least December 11, 2006 (the "Conspiracy

11   Period"). Defendants and their co-conspirators engaged in hundreds of in-person meetings,

12   telephone calls, e-mails, and other communications in the United States and abroad to exchange

13   pricing and other competitive information to be used in fixing the prices for TFT-LCD Panels

14   sold to U.S. companies such as HP, Dell, Apple, Motorola, and others.

15       3.     Defendants and their co-conspirators reached into the United States from abroad to

16   injure HP. They targeted HP in the United States, reached agreements with HP in the United

17   States, and caused economic loss to HP in the United States. Defendants and their co-

18   conspirators maintained U.S. offices and had U.S. marketing, sales, and account management

19   teams specifically designated to handle HP's account. Defendants and their co-conspirators

20   coordinated and reached agreement among themselves in the United States (in particular,

21   California and Texas) to sell price-fixed TFT-LCD Panels to HP. Defendants and their co-

22   conspirators negotiated and reached agreement with HP in the United States for the purchase of

23   TFT-LCD Panels at artificially inflated prices. Then, pursuant to the terms of those U.S.-

24   negotiated agreements, panels were delivered abroad to an HP subsidiary and to HP's contract

25   manufacturers for incorporation into finished products destined for consumers in the United

26   States and elsewhere.

27   / / /

28   / / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

4.      At least seven TFT-LCD Panel manufacturers have admitted that they took part in a conspiracy to unlawfully fix the prices of TFT-LCD Panels.  On November 12, 2008, the United States Department of Justice ("DOJ") announced that Sharp Corporation, Chunghwa Picture Tubes, Ltd., and LG Display Co., Ltd. (and its wholly owned subsidiary, LG Display America, Inc.) agreed to plead guilty to violating Section 1 of the Sherman Act (15 U.S.C. § 1) for conspiring to fix the prices of TFT-LCD Panels.  These companies agreed to pay criminal fines of $585 million.  On March 10, 2009, the DOJ announced that Hitachi Displays Ltd. agreed to plead guilty and pay a $31 million fine for its role in the conspiracy to fix the prices of TFT-LCD Panels.  On August 25, 2009, Epson Imaging Devices Corporation agreed to plead guilty and pay a $26 million fine.  On January 6, 2010, Chi Mei Optoelectronics Corporation pled guilty and agreed to pay a $220 million fine.  On June 29, 2010, the DOJ announced that HannStar Display Corporation agreed to plead guilty and pay a $30 million fine.  Since November 12, 2008, numerous executives of the foregoing companies have pled guilty to price fixing or have been indicted.  To date, the price-fixing companies have agreed to pay criminal fines of more than $890 million.  The DOJ's criminal investigation is ongoing.

5.      By targeting HP in the United States, maintaining U.S. teams for HP's account, engaging in conspiratorial meetings and communications in the United States, and negotiating a single, worldwide price at HP's facilities in the United States, Defendants and their co-conspirators caused HP to pay artificially inflated prices for TFT-LCD Panels that it purchased during the Conspiracy Period.  Defendants and their co-conspirators caused TFT-LCD Panel prices to far exceed the prices that HP would have paid if the prices for TFT-LCD Panels had been determined by a competitive market.  Thus, HP suffered damages from purchases of TFT-LCD Panels from Defendants and their co-conspirators.

## II.      JURISDICTION AND VENUE

6.      HP brings this action under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain treble damages and injunctive relief, as well as reasonable attorneys' fees and costs, against Defendants.

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

7. HP also brings this action pursuant to the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 et seq., and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq., for injunctive relief and damages that HP sustained as a result of Defendants' violation of federal and state antitrust and unfair competition laws. With its headquarters and substantial operations in Palo Alto, California, HP has a significant presence in California. As the parent corporation in the United States that reports consolidated financial results, HP suffered the financial injury from the illegal price-fixing conspiracy alleged herein in California. In addition, during and after the Conspiracy Period, HP negotiated and entered into agreements to purchase TFT-LCD Panels in California. Representatives of Defendants and their co-conspirators and their U.S.-based subsidiaries and affiliates negotiated and supported sales of TFT-LCD Panels to HP from their sales offices in California and other parts of the United States. Moreover, Defendants and their co-conspirators effectuated the illegal price-fixing conspiracy alleged herein through a combination of group and bilateral communications that took place in California and other parts of the United States, as well as abroad. For these reasons, HP is entitled to the protection of the California Cartwright Act and the California Unfair Competition Law.

8. HP also brings this action pursuant to the Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Com. Code §§ 15.01 et seq., to obtain treble damages and injunctive relief, as well as reasonable attorneys' fees and costs, against Defendants. HP has substantial operations in Houston, Texas and has a significant presence in Texas. In addition, during and after the Conspiracy Period, HP negotiated and entered into agreements to purchase TFT-LCD Panels in Texas. HP's procurement team based in Houston, Texas negotiated prices and quantities for all purchases of TFT-LCD Panels from HP's offices in Houston, Texas. Representatives of Defendants and their co-conspirators and their U.S.-based subsidiaries and affiliates negotiated and supported sales of TFT-LCD Panels to HP from their sales offices in Texas and other parts of the United States. Moreover, Defendants and their co-conspirators effectuated the price-fixing conspiracy alleged herein through a combination of group and bilateral communications that took place in Texas and other parts of the United States, as well as abroad. For these reasons, HP is entitled to the protection of the Texas Free Enterprise and Antitrust Act of 1983.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

9.      This Court has jurisdiction over HP's claims under Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act pursuant to 28 U.S.C. §§ 1331 and 1337.

10.     This Court has supplemental jurisdiction over HP's claims under the California Cartwright Act, the California Unfair Competition Law, and the Texas Free Enterprise and Antitrust Act pursuant to 28 U.S.C. § 1367.  These state law claims are so related to HP's claims under Section 1 of the Sherman Act and Sections 4 and 12 of the Clayton Act that they form part of the same case or controversy.

11.     The activities of Defendants and their co-conspirators, as described herein, directly involved U.S. import trade or commerce.  Defendants and their co-conspirators knew that their price-fixed TFT-LCD Panels would be incorporated into products containing TFT-LCD Panels ("TFT-LCD Products") sold in the United States.  Defendants and their co-conspirators knowingly and intentionally sent price-fixed TFT-LCD Panels and TFT-LCD Products into a stream of commerce that led directly into the United States.  This conduct by Defendants and their co-conspirators was meant to produce and did in fact produce artificially-inflated prices in the United States for TFT-LCD Panels and TFT-LCD Products.

12.     At all times, Defendants and their co-conspirators were fully aware that the artificially inflated prices they negotiated with HP would govern the deliveries of TFT-LCD Panels to HP's subsidiary and contract manufacturers abroad, and that a large percentage of those TFT-LCD Panels would be incorporated into TFT-LCD Products and immediately shipped into the United States for sale in the United States.

13.     Defendants and their co-conspirators who have entered guilty pleas in connection with the conspiracy alleged herein have acknowledged that their illegal activities affected imports into the United States and had a substantial effect on American import trade and import commerce.  They have expressly admitted that "[TFT-LCD Panels] affected by [their] conspiracy [were] sold by one or more of the conspirators to customers in [the Northern District of California]."

14.     Defendants' and their co-conspirators' illegal conduct had a direct, substantial, and reasonably foreseeable effect on U.S. domestic trade or commerce.  Defendants and their co-

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1   conspirators' illegal conduct caused HP to enter into agreements to purchase TFT-LCD Panels at

2   supra-competitive prices – prices that were the product of collusion.  These negotiations and

3   agreements in the United States resulted in the delivery of TFT-LCD Panels to HP's subsidiary

4   and contract manufacturers abroad at the higher prices determined in the United States, thereby

5   causing overcharges to be incurred and directly giving rise to HP's antitrust claims.

6        15.    The activities of Defendants and their co-conspirators, as described herein, were

7   within the flow of, were intended to, and did have a direct and substantial effect on commerce in

8   California and Texas.  HP maintained its headquarters in California, and it had substantial

9   operations, including its procurement team, in Texas during and after the Conspiracy Period.

10  Defendants' and their co-conspirators' conspiracy directly and substantially affected the price of

11  TFT-LCD Panels and TFT-LCD Products purchased in California and Texas.

12       16.    This Court has personal jurisdiction over Defendants because, as alleged below,

13  Defendants and their agents and co-conspirators transacted business and engaged in commerce

14  within the United States and intentionally caused HP to suffer injury in the United States and in

15  California.

16       17.    Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C.

17  § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in

18  this district; or, alternatively, at least one of Defendants is licensed to do business or is doing

19  business in this district; or, alternatively, a Defendant is a foreign corporation doing business in

20  this district.

21       18.    Intradistrict assignment to the San Francisco division is proper pursuant to the

22  order issued by the Honorable Susan Illston in the United States District Court, Northern District

23  of California, San Francisco Division, on July 3, 2007, requiring that all antitrust actions relating

24  to an alleged conspiracy to fix the prices of TFT-LCD Panels be filed in the Northern District of

25  California and all "tag-along actions" be filed in, removed to, or transferred to Judge Illston's

26  Court in the San Francisco Division.

27  / / /

28  / / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-5-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1

### III. PARTIES

2

**A. Plaintiff**

3       19.     Plaintiff Hewlett-Packard Company is a Delaware corporation with its principal

4   place of business in Santa Clara County, in the city of Palo Alto, California. HP is one of the

5   leading information technology companies in the world and employs over 300,000 employees.

6   HP has its headquarters in Palo Alto, California, and it also has a number of other facilities in

7   California and elsewhere in the United States, including Houston, Texas. HP sells numerous

8   products that incorporate TFT-LCD Panels, including desktop monitors, notebook computers,

9   printers, cameras, and televisions (collectively, "HP TFT-LCD Products"). HP is the parent

10  corporation in the United States that reports consolidated financial results involving its

11  subsidiaries.

12      20.     In May 2002, HP completed its acquisition of Compaq Computer Corporation

13  ("Compaq"). Prior to the acquisition, Compaq had its principal place of business in Houston,

14  Texas and sold numerous products, including personal computer desktop monitors and notebooks.

15  As the successor of Compaq, HP also brings this action to recover overcharges based on

16  Compaq's purchases of TFT-LCD Panels from Defendants and their co-conspirators during the

17  Conspiracy Period.

18      21.     Hewlett-Packard Intl. Pte Ltd. in Singapore ("HP's foreign subsidiary") purchased

19  TFT-LCD Panels from Defendants and their co-conspirators during the Conspiracy Period for

20  inclusion in HP TFT-LCD Products pursuant to the terms of the agreements negotiated by HP in

21  the United States. HP's foreign subsidiary has agreed that HP and HP alone will pursue damages

22  based on its purchases of TFT-LCD Panels from Defendants and their co-conspirators during the

23  Conspiracy Period. This entity has assigned to HP any claims that it may have based on these

24  purchases. As a result, HP's foreign subsidiary will not be pursuing the claims alleged herein.

25      22.     Similarly, the original design manufacturers ("ODMs") listed in Exhibit A (the

26  "ODMs") purchased TFT-LCD Panels from Defendants and their co-conspirators during the

27  Conspiracy Period for inclusion in HP TFT-LCD Products pursuant to the terms of the

28  agreements negotiated by HP in the United States. The ODMs have agreed that HP and HP alone

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

will pursue damages based on these purchases.  The ODMs have assigned to HP any claims that they may have based on their purchases of TFT-LCD Panels that HP directed them to make for inclusion in HP TFT-LCD Products.  As a result, the ODMs will not be pursuing the claims alleged herein.

**B.**     **Defendants**

23.     Defendant Epson Imaging Devices Corporation is a Japanese company with its principal place of business at 3-101 Minami-Yoshikata, Tottori-shi, Tottori 680-0843, Japan.  The company was originally formed as a joint venture between Seiko Epson Corporation and Sanyo Electric Co., Ltd. but is now a wholly-owned subsidiary of Seiko Epson Corporation.  Until December 28, 2006, Epson Imaging Devices Corporation was known as Sanyo Epson Imaging Devices Corporation.  During the Conspiracy Period, Epson Imaging Devices Corporation manufactured, marketed, and/or sold TFT-LCD Panels throughout the United States and elsewhere.

24.     Defendant Epson Electronics America, Inc. is a California corporation with its principal place of business at 2580 Orchard Parkway, San Jose, California.  Epson Electronics America, Inc. is a wholly-owned and controlled subsidiary of Seiko Epson Corporation.  During the Conspiracy Period, Epson Electronics America, Inc. manufactured, marketed, and/or sold TFT-LCD Panels throughout the United States and elsewhere.

25.     The terms "Epson" and "Defendants" include Epson Imaging Devices Corporation and Epson Electronics America, Inc.

26.     The acts charged in this Complaint were done by Defendants or were ordered or done by Defendants' officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.  At all relevant times, Defendants were the agents of each of their co-conspirators, and in doing the acts alleged herein, were acting within the scope of such agency.  Defendants ratified and/or authorized the wrongful acts of each of their co-conspirators.  Defendants are sued as participants and as aiders and abettors in the unlawful acts alleged herein. Defendants and their co-conspirators participated as members of a conspiracy, acted in

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1   furtherance of it, aided and assisted in carrying out its purposes, and performed acts and made

2   statements in furtherance of the conspiracy.

**C.     Agents and Co-Conspirators**

4        27.     Various other individuals, partnerships, corporations and business entities, not

5   named as defendants in this Complaint, participated as agents or co-conspirators in the violations

6   alleged herein and performed acts and made statements in furtherance of it.  HP specifically

7   alleges that the following companies, together with their employees, officers and agents, are co-

8   conspirators of Defendants, and the actions and statements of such co-conspirators (and their

9   agents, officers and employees) are admissible against Defendants:  AU Optronics Corporation,

10  Quanta Display Inc. ("QDI"), and AU Optronics Corporation America  (collectively, "AUO");

11  Chi Mei Corporation , Chimei Innolux Corporation (formerly known as Chi Mei Optoelectronics

12  Corporation), Chi Mei Optoelectronics USA, Inc. (formerly known as International Display

13  Technology USA, Inc.), CMO Japan Co., Ltd. (formerly known as International Display

14  Technology, Ltd.), Nexgen Mediatech, Inc., and Nexgen Mediatech USA, Inc. (collectively, "Chi

15  Mei"); Chunghwa Picture Tubes, Ltd. and Tatung Company of America, Inc. (collectively,

16  "Chunghwa"); HannStar Display Corporation ("HannStar"); Hitachi Ltd., Hitachi Displays, Ltd.,

17  and Hitachi Electronic Devices (USA), Inc. (collectively, "Hitachi"); LG Display Co., Ltd.

18  (formerly known as LG Philips LCD Co., Ltd.) and LG Display America, Inc. (collectively, "LG

19  Display"); LG Electronics, Inc. and LG Electronics USA, Inc. (collectively, "LG Electronics");

20  Samsung Electronics Company, Ltd., Samsung Electronics America, Inc., and Samsung

21  Semiconductor, Inc. (collectively, "Samsung"); Sharp Corporation and Sharp Electronics

22  Corporation (collectively, "Sharp"); Toshiba Corporation, Toshiba America Electronic

23  Components, Inc., Toshiba America Information Systems, Inc., and Toshiba Mobile Display Co.,

24  Ltd. (formerly known as Toshiba Matsushita Display Technology Co., Ltd.) (collectively,

25  "Toshiba"); Royal Philips Electronics N.V. and Philips Electronics North America Corp., Ltd.

26  (collectively, "Royal Philips"); NEC LCD Technologies, Ltd. ("NEC"); Hydis Technologies Co.,

27  Ltd. (formerly known as BOE Hydis Technology Co., Ltd.) ("Hydis"); Panasonic Corporation

28  and Panasonic Corporation of North America (collectively, "Panasonic"); IPS Alpha Technology,

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1   Ltd. ("IPS Alpha"); Mitsui & Co., Ltd. ("Mitsui"); and Mitsubishi Electric Corporation

2   ("Mitsubishi").  The term "co-conspirators" includes all of these companies.

3         28.      When HP refers to a corporate family or companies by a single name in its

4   allegations of participation in the conspiracy, HP is alleging on information and belief that one or

5   more employees or agents of entities within the corporate family engaged in conspiratorial

6   meetings on behalf of every company of that family.  The individual participants in the

7   conspiratorial meetings and discussions did not always know the corporate affiliation of their

8   counterparts, nor did they distinguish between the entities within a corporate family.  The

9   individual participants entered into agreements on behalf of, and reported these meetings and

10  discussions to, their respective corporate families.  Consequently, each entire corporate family

11  was represented in meetings and discussions by their agents and each was a party to the

12  agreements reached in them.

13                      IV.      FACTUAL ALLEGATIONS

14        A.      Defendants And Their Co-Conspirators Engaged In Price-Fixing Of TFT-
                  LCD Panels In The United States And Abroad.
15

16        29.      Defendants and their co-conspirators conspired to fix, raise, maintain, and stabilize

17  the prices of TFT-LCD Panels sold to customers in the United States, including HP.  Defendants'

18  and their co-conspirators' price-fixing conspiracy was effectuated through a combination of secret

19  group and bilateral meetings and discussions at all levels of Defendants and their co-conspirators

20  that took place in the United States and abroad.  Senior executives of Defendants and their co-

21  conspirators instructed their subordinates in the United States to communicate with employees of

22  their competitors to exchange pricing and other competitive information to be used in fixing the

23  price of TFT-LCD Panels sold to U.S. companies, including HP.  Defendants' and their co-

24  conspirators' employees engaged in these illegal communications in the United States and used

25  the information exchanged among them to artificially inflate the prices paid by U.S. companies,

26  including HP, for TFT-LCD Panels.

27        30.      During the Conspiracy Period, Defendants and their co-conspirators collectively

28  controlled the market for TFT-LCD Panels, both globally and in the United States.  TFT-LCD

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1   Panels are used in desktop monitors, notebook computers, televisions, mobile wireless handsets,

2   printers, cameras, and numerous other electronic products.  TFT-LCD Panels are manufactured

3   by sandwiching liquid crystal between two glass substrates.  One glass substrate contains thin

4   chemical films that act as transistors, and the other is coated with liquid pigments that act as color

5   filters.  When voltage is applied to the transistors, the liquid crystal bends, causing light to pass

6   through the filters to create red, green or blue pixels.  The resulting screen contains hundreds or

7   thousands of electrically charged dots, called pixels, that form an image on the panel.

8          31.     The U.S. market for TFT-LCD Panels and TFT-LCD Products has always been

9   one of the largest and most profitable markets for Defendants and their co-conspirators.  The

10  TFT-LCD Panel industry has several characteristics that facilitated conspiracy to fix prices,

11  including high concentration, consolidation, significant barriers to entry, homogeneity of

12  products, multiple interrelated business relationships, and ease of information sharing.

13         32.     The TFT-LCD Panel industry is highly concentrated and thus conducive to

14  collusion.  Throughout the Conspiracy Period, Defendants and their co-conspirators collectively

15  controlled the global and U.S. TFT-LCD Panel markets.

16         33.     The TFT-LCD Panel industry has undergone significant consolidation since its

17  inception in the mid-1990s.  For example, in 1999, the three major TFT-LCD Panel

18  manufacturers in Korea became two when LG Electronics, Inc. merged with Hyundai.  That same

19  year, LG Electronics, Inc. also merged with the Dutch corporation, Koninklijke Philips

20  Electronics N.V., to create LG Display.  In 2000, Japanese competitors NEC and Casio

21  Computer, Co. Ltd. formed a partnership to develop and manufacture TFT-LCD Panels.  Around

22  the same time, Toshiba and Matsushita Electric Industrial Co., Ltd. (owner of Panasonic), formed

23  AFTPD Pte. Ltd., a joint venture created to produce TFT-LCD Panels.  In 2001, Chi Mei set up a

24  joint venture with IBM, forming International Display Technology Ltd. (IDTech), which was

25  subsequently sold to Sony in 2005.  AUO was formed in 2001 by the merger of Acer Display

26  Technology, Inc. and Unipac Optoelectronics Corporation.  AUO acquired Quanta Display Inc. in

27  2006, becoming the third-largest manufacturer of TFT-LCD Panels.

28  / / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

34.     The TFT-LCD Panel industry is characterized by high barriers to entry.  New fabrication plants, or "fabs," can cost upwards of $2 to $3 billion, and constant research and development and investment are necessary to keep up with the rapidly evolving technology and intellectual property requirements.  Thus, companies cannot enter the market for the production and sale of TFT-LCD Panels without an enormous amount of capital investment.

35.     TFT-LCD Panels, whether incorporated into desktop monitors, notebook computers, televisions or mobile wireless handsets, are manufactured to several standard sizes, regardless of manufacturer.  The manufacture of standard panel sizes for TFT-LCD Products across the TFT-LCD Panel industry facilitates price transparency in the market for TFT-LCD Panels and allows TFT-LCD Panel manufacturers to monitor and analyze TFT-LCD Panel prices, which enables Defendants and their co-conspirators to enforce their price-fixing conspiracy.

36.     The TFT-LCD Panel industry is a web of cross-licensing agreements, joint ventures, and other cooperative agreements that are conducive to participating in a conspiracy.  For example, AUO entered into licensing agreements with Sharp in 2005 and Samsung in 2006.  Chunghwa did the same with Sharp in December 2006.  Chi Mei has licensing arrangements with AUO, Sharp, Chunghwa, HannStar, and Hitachi.  These close business relationships provided an opportunity for competitors to collude and made it easier to implement a conspiracy to fix prices.

37.     Personal relationships between executives of certain companies, common memberships in trade associations, and allegiances between companies based in the same country or region also contributed to the numerous opportunities that Defendants and their co-conspirators had to discuss and exchange competitive information.  Defendants and their co-conspirators took advantage of these opportunities to discuss and agree on their pricing of TFT-LCD Panels and monitor each other's compliance with price-fixing agreement.

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

**B.**     **Defendants And Their Co-Conspirators Specifically Targeted HP As A Victim Of Their Price-Fixing Conspiracy.**

     **1.**     **Defendants And Their Co-Conspirators Negotiated And Reached Agreements With HP In The United States To Sell TFT-LCD Panels At Artificially Inflated Prices.**

38.     HP's purchases of TFT-LCD Panels were made pursuant to a global procurement strategy formulated and directed by HP's central procurement team in the United States. HP and Defendants and their co-conspirators negotiated and entered into agreements in the United States that applied globally, and the price to be paid to Defendants and their co-conspirators did not depend on the place of delivery or the entity taking delivery.



41.     HP in the United States directed the purchase of TFT-LCD Panels by HP's foreign subsidiary and the ODMs. At all relevant times, HP established the price, quantity, and specifications at which its foreign subsidiary and ODMs purchased TFT-LCD Panels. HP also

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-12-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1   directed the timing of the purchases and the purposes for which they were used.  HP's U.S.-based

2   procurement team was responsible for final approval on pricing, conditions, and projected

3   quantities for all purchases of TFT-LCD Panels.

4           42.     During and after the Conspiracy Period, Defendants and their co-conspirators

5   employed marketing, sales, and account management teams specifically designated to handle the

6   U.S. market for TFT-LCD Panels and U.S. customer accounts, including HP.  HP's employees in

7   Houston negotiated pricing and quantities of TFT-LCD Panels directly with Defendants' and their

8   co-conspirators' employees located in the United States (generally in either Houston or San Jose,

9   California) by regularly communicating by e-mail and telephone and meeting in person in the

10  United States.  For example, AUO employee Dominic Chen, who was located in Houston,

11  regularly communicated with HP employees in Houston about TFT-LCD pricing and supply.

12  Defendants' and their co-conspirators' executives also met with HP's procurement team in

13  Houston and Palo Alto for in-person meetings to discuss future TFT-LCD Panel business.

14          **2.      Defendants And Their Co-Conspirators Coordinated And Reached
                Agreement With Competitors In The United States On The Prices And
15              Quantities Of TFT-LCD Panels Sold To HP.**

16          43.     Not only did Defendants and their co-conspirators meet with HP in the United

17  States to negotiate prices and quantities of TFT-LCD Panels sold to HP (a process tainted by

18  Defendants' and their co-conspirators' price-fixing conspiracy),  they also coordinated and

19  reached agreement with each other in the United States (in particular, California and Texas) to

20  sell TFT-LCD Panels at artificially inflated prices to HP.  For example:

21          44.     As early as 1999, manufacturers shared pricing plans in order to coordinate prices

22  offered to specific customers, including HP.

23

24

25

26

27  / / /

28  / / /



CROWELL
& MORING LLP
ATTORNEYS AT LAW



51.

52.

53.

**C.    Defendants And Their Co-Conspirators Also Engaged In Conspiratorial Conduct With Competitors Abroad To Coordinate And Carry Out Their Price-Fixing Conspiracy In The United States.**

54.    Japanese companies (Hitachi, Sharp, and Toshiba) were the first manufacturers of TFT-LCD Panels, and in the early years of the conspiracy they began holding bilateral meetings to discuss prices and output. As Korean companies (LG Display and Samsung) entered the TFT-LCD Panel market in the 1990s, they joined the Japanese companies in the conspiracy. In 1999, Taiwanese companies (AUO, QDI, Chi Mei, and HannStar) began entering the market and eventually joined the conspiracy as well. The rapid increase in numbers of competitors in the TFT-LCD Panel market led to more group meetings, and by 2001 a formal system of group and bilateral meetings was in place.

55.    Defendants' and their co-conspirators' employees were regular attendees of group meetings with competitors during the Conspiracy Period. These group meetings took place at three different levels of seniority: (1) "CEO" or "top" meetings attended by senior-level executives, such as the presidents of TFT-LCD divisions; (2) "crystal," "commercial," "supplier," or "operation" meetings attended by management-level employees, such as vice presidents of

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-15-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1   sales and marketing and other senior-level sales employees; and (3) meetings attended by lower-

2   level sales and marketing personnel.  The purpose of all these meetings was to fix, raise,

3   maintain, and stabilize prices.

4          56.     "CEO" or "top" meetings took place numerous times up to once every quarter

5   from 2001 through 2006.  At these meetings, senior-level executives discussed global pricing for

6   TFT-LCD Panels, production volume and demand, general market conditions, new TFT-LCD

7   Products, issues related to specific customers, and long-term issues facing the TFT-LCD industry.

8          57.     "Crystal" or "supplier" meetings were working-level meetings that took place

9   monthly.  Participants designated one person as the "chairman" of the meeting who used a

10  projector or white board to display information on pricing and supply for group discussion.

11  Participants made comments and adjusted numbers until they reached an agreement on TFT-LCD

12  Panel prices.  Participants took notes and exchanged and downloaded files, including Excel

13  spreadsheets, onto USB flash drives to send back to company headquarters.

14         58.     The agendas of these "crystal" or "supplier" meetings consisted of:  (i) agreeing on

15  prices for the following month and projecting future prices; (ii) determining values of various

16  attributes of TFT-LCD Panels, such as quality or technical specifications; (iii) exchanging

17  information about production capacity; (iv) coordinating false public statements about the reasons

18  for artificial price increases and reductions in volume; (v) exchanging information about supply

19  and demand; (vi) trading information about new technology and when it would come on line; and

20  (vii) reaching out to other competitors to encourage them to abide by the price-fixing agreements.

21         59.     The crystal meeting participants agreed to raise prices or keep prices in certain

22  ranges, including pricing for specific customers and target prices for the following month.  Each

23  person verified that his or her employer was complying with the conspiracy.  If a participant had

24  offered a customer a price that the group considered out of line, that participant had to explain the

25  reasoning behind the price.  If the group did not accept the explanation, the group would "jaw-

26  bone" that participant into agreeing to offer the "right" price.

27         60.     The lower level meetings were less formal than the CEO or crystal meetings and

28  typically occurred at restaurants over lunch.  The purpose of those meetings was to exchange

1   information about pricing and production, and to carry out and monitor agreements made at the

2   CEO and crystal meetings.

3        61.      In addition to group meetings, competitors held countless bilateral meetings that

4   were separate from contacts that generally occurred at trade shows, technical meetings, and

5   supplier days.  Competitors conducted these meetings in person, by telephone, and via e-mail and

6   instant messaging to exchange information about TFT-LCD Panel price and production.  They

7   used bilateral meetings to coordinate prices with competitors who did not ordinarily attend the

8   group meetings, and to coordinate prices with competitors about specific customers, including

9   exchanging information to avoid being persuaded by specific customers to cut prices.

10       62.      To enforce and monitor agreements made at group and bilateral meetings,

11  Defendants and their co-conspirators checked up on each other through self-reporting, through

12  customers, and by reviewing monthly data provided by TFT-LCD market research firms on

13  pricing and output.

14       63.      Examples of such meetings and communications are set forth at paragraphs 64 to

15  73 below.

16       64.



23       65.

CROWELL
& MORING LLP
ATTORNEYS AT LAW



CROWELL
& MORING LLP
ATTORNEYS AT LAW

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

73. █████████████████████████████████████████

**D.      Defendants And Their Co-Conspirators Have Been Charged With And Have Pleaded Guilty To Participating In Price-Fixing Of TFT-LCD Panels And TFT-LCD Products In The United States.**

74.      In December 2006, authorities in Japan, South Korea, the European Union, and the United States revealed the existence of a comprehensive investigation into anticompetitive activity among TFT-LCD Panel manufacturers.

75.      At least one of the TFT-LCD Panel manufacturers has approached the Antitrust Division of the DOJ to enter into a leniency agreement with respect to Defendants' and their co-conspirators' conspiracy to fix prices of TFT-LCD Panels.  In order to enter into a leniency agreement under the DOJ's Corporate Leniency Policy, this TFT-LCD Panel manufacturer has reported Defendants' and their co-conspirators' price-fixing conspiracy to the DOJ and has confessed its own participation in that conspiracy.  The DOJ's investigation of the remaining TFT-LCD Panel manufacturers is ongoing and is expected to result in additional guilty pleas and criminal fines from other TFT-LCD Panel manufacturers.  However, a number of Defendants and their co-conspirators (along with their executives) have pleaded guilty.

76.      To date, Chi Mei Optoelectronics Corporation, Chunghwa Picture Tubes, Ltd., Epson Imaging Devices Corporation, HannStar Display Corporation, Hitachi Displays Ltd., LG Display Co., Ltd., LG Display America, Inc., and Sharp Corporation have admitted and pleaded guilty to participating in a conspiracy with major TFT-LCD Panel manufacturers to fix the price of TFT-LCD Panels sold in the United States and elsewhere.  In their plea agreements, these companies admit that they participated in meetings, conversations, and communications to discuss the prices of TFT-LCD Panels, agreed to fix the prices of TFT-LCD Panels, and exchanged pricing and sales information for the purposes of monitoring and enforcing adherence to agreed-upon prices.  They also admit that acts in furtherance of the price-fixing conspiracy were carried out in California.  These companies also agreed to pay criminal fines that total close

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-19-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1    to $1 billion.  These companies, however, have not paid any restitution to victims of their

2    conspiracy under their plea agreements.

3         77.    In addition, since November 12, 2008, numerous executives of the foregoing

4    companies have admitted and pleaded guilty to price fixing and have agreed to pay criminal fines

5    and to serve prison time in the United States.

6         78.    On July 9, 2010, the DOJ filed a criminal indictment against AUO for its

7    participation in the price-fixing conspiracy in violation of Section 1 of the Sherman Act, 15

8    U.S.C. § 1.  Among other things, the DOJ is seeking restitution and a criminal fine in an amount

9    equal to the largest of:  (a) $100 million; (b) twice the gross pecuniary gain derived from the

10   crime; or (c) twice the gross pecuniary loss caused to the victims of the crime.

11   **E.    As A Result Of Defendants' And Their Co-Conspirators' Price-Fixing
12   Conspiracy, HP Has Suffered Damages.**

13        79.    Defendants and their co-conspirators conspired to offer artificially inflated prices

14   for TFT-LCD Panels to HP's procurement personnel based in Houston, Texas.  The agreements

15   reached in the United States to accept these artificially inflated prices were a direct, substantial,

16   and reasonably foreseeable effect of Defendants' and their co-conspirators' illegal conduct.

17

18

19

20        These illegally obtained agreements directly caused HP to pay supra-competitive

21   prices for TFT-LCD Panels.

22        80.    As a result, the injury from purchases of the price-fixed TFT-LCD Panels is borne

23   by HP in the United States.

24   / / /

25

26

27

28

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

**F.**     **HP Is Entitled To Seek Damages For Purchases Made More Than Four Years Before The Filing Of This Complaint Because Defendants And Their Co-Conspirators Took Affirmative Steps To Conceal Their Price-Fixing Conspiracy.**

81.     HP had no knowledge of the conspiracy to fix prices of TFT-LCD Panels until December 2006, when investigations by the DOJ and other antitrust regulators became public. HP did not discover the existence of the conspiracy until then, and could not have discovered it through the exercise of due diligence until then.  Defendants and their co-conspirators took affirmative steps to conceal their collusive activity by keeping meetings with competitors secret and by making false public statements about the reasons for artificial price increases of TFT-LCD Panels.

82.     The group and bilateral meetings concerning collusive conduct were conducted in secret, maintained as confidential, and could not, in the exercise of reasonable diligence, have been discoverable by HP earlier than December 2006.

83.     Participants at the monthly crystal meetings described above agreed to keep them secret.  The location of a meeting was sometimes circulated only the day before the event in order to avoid detection.  At the CEO group meetings, participants were not allowed to distribute notes and they left meetings one by one, rather than as a group, in order to conceal their actions.

84.     Participants at crystal meetings also agreed to pretextual reasons for price increases of TFT-LCD Panels.  They agreed to lie to the media in the United States and elsewhere by reporting that their fabs were operating at full capacity even when they were not, in order to create the appearance of a supply shortage.  For example:

85.     On January 14, 2002, Bruce Berkoff, executive vice president of LG Philips LCD, gave an interview to CNET News.  He reported that price increases of TFT-LCD Panels were due to supply shortages and claimed that "demand grew so fast that supply can't keep up."

86.     In addition, in an interview with Taiwan Economic News in October 2001, Chen Shuen-Bin, President of AUO, and Hsu Jen-Ting, a Vice President at Chi Mei, blamed "component shortages due to the late expansion of fifth generation production lines and new demand from the replacement of traditional cathode ray tubes with LCD monitors."

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-21-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

87.   At the time these statements were made, HP had no reason to disbelieve the statements.  Furthermore, because most of the explanations provided by Defendants and their co-conspirators involved non-public and/or proprietary information completely within the control of those companies, HP could not verify the accuracy of the statements.  The purported reasons given by Defendants and their co-conspirators for the price increases of TFT-LCD Panels were materially false and misleading and were made for the purpose of concealing the price-fixing conspiracy.

88.   As a result, HP is entitled to seek damages for its purchases of TFT-LCD Panels from Defendants and their co-conspirators during the Conspiracy Period.

## V.    FIRST CAUSE OF ACTION
### (VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1)

89.   HP incorporates by reference paragraphs 1 through 88 of this Complaint, as though fully set forth in this paragraph.

90.   Beginning at least as early as January 1, 1996 and continuing through at least December 11, 2006, the exact dates being unknown to HP, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for TFT-LCD Panels in the United States and elsewhere, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

91.   HP is informed and believes, and thereon alleges, that in formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including:

  a.   participating in meetings and conversations, in the United States and elsewhere, to fix, raise, maintain, and/or stabilize the price of TFT-LCD Panels;

  b.   communicating in writing, in the United States and elsewhere, to fix, raise, maintain, and/or stabilize the price of TFT-LCD Panels;

  c.   restricting supply of TFT-LCD Panels in order to artificially inflate the price of TFT-LCD Panels;

///

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-22-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

d. issuing price announcements and price quotations, in the United States and elsewhere, in accordance with illegal conspiratorial conduct;

e. negotiating and entering into agreements with HP in Texas and California to sell TFT-LCD Panels at artificially inflated prices;

f. selling TFT-LCD Panels to HP and other customers in the United States and elsewhere at artificially inflated prices;

g. exchanging information, in the United States and elsewhere, on prices for TFT-LCD Panels sold to HP and other customers for the purpose of monitoring and enforcing adherence to the illegal agreements; and

h. providing false statements to the public, in the United States and elsewhere, to explain increased prices for TFT-LCD Panels.

92. As a direct result of Defendants' and their co-conspirators' illegal conduct alleged above, price competition in the sale of TFT-LCD Panels has been restrained, suppressed, and/or eliminated in the United States. HP was damaged in its business and property in that, during the Conspiracy Period, HP purchased TFT-LCD Panels from Defendants and their co-conspirators and paid more for TFT-LCD Panels than it would have in the absence of Defendants' and their co-conspirators' illegal price-fixing.

93. Defendants' and their co-conspirators' conduct involved United States import trade or commerce.

94. Defendants' and their co-conspirators' conduct had a direct, substantial, and reasonably foreseeable effect on United States domestic commerce that directly resulted in the injuries suffered by HP and gave rise to HP's antitrust claims.

95. HP has been injured and will continue to be injured by paying artificially inflated prices for TFT-LCD Panels purchased from Defendants, their co-conspirators, and others should the conspiracy continue.

96. Because HP has suffered injury as a direct, proximate, and foreseeable result of Defendants' and their co-conspirators' conspiracy to fix the price of TFT-LCD Panels, HP is

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-23-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1   entitled to damages under Section 4 of the Clayton Act (15 U.S.C. § 15) for its purchases of TFT-

2   LCD Panels produced by Defendants and their co-conspirators.

3         97.      Because HP faces serious risk of future injury, HP is entitled to an injunction

4   under Section 16 of the Clayton Act (15 U.S.C. § 26) against Defendants, preventing and

5   restraining the violations alleged herein.  Defendants continue to manufacture TFT-LCD Panels,

6   and the market for production and sale of TFT-LCD Panels remains highly concentrated and

7   susceptible to collusion.  Defendants continue to have the incentive to collude to increase or

8   stabilize TFT-LCD Panel prices, and Defendants' and their co-conspirators' conspiracy to fix the

9   price of TFT-LCD Panels could be easily repeated and concealed from HP.

10        98.      HP has sustained actual damages of over $1,000,000,000, with an exact amount to

11  be determined at trial.

### VI.   SECOND CAUSE OF ACTION
### (VIOLATION OF THE CALIFORNIA CARTWRIGHT ACT, CAL. BUS. & PROF. CODE §§ 16700 ET SEQ.)

14        99.      HP incorporates by reference paragraphs 1 through 98 of this Complaint, as though

15  fully set forth in this paragraph.

16        100.     Beginning at least as early as January 1, 1996 and continuing through at least

17  December 11, 2006, the exact dates being unknown to HP, Defendants and their co-conspirators

18  entered into and engaged in a continuing unlawful trust in restraint of trade and commerce to

19  artificially raise, fix, maintain, and/or stabilize prices for TFT-LCD Panels in California and

20  elsewhere in violation of the California Business & Professions Code §§ 16700 et seq.

21        101.     HP is informed and believes, and thereon alleges, that in formulating and carrying

22  out the alleged unlawful trust in restraint of trade and commerce, Defendants and their co-

23  conspirators did those things that they combined and conspired to do, including:

24              a.   participating in meetings and conversations, in California and elsewhere, to fix,

25                   raise, maintain, and/or stabilize the price of TFT-LCD Panels;

26              b.   communicating in writing, in California and elsewhere, to fix, raise, maintain,

27                   and/or stabilize the price of TFT-LCD Panels;

28  / / /

c.   restricting supply of TFT-LCD Panels in order to artificially inflate the price of
TFT-LCD Panels;

d.   issuing price announcements and price quotations, in California and elsewhere, in
accordance with illegal conspiratorial conduct;

e.   negotiating and entering into agreements with HP in California to sell TFT-LCD
Panels at artificially inflated prices;

f.   selling TFT-LCD Panels to HP and other customers, in California and elsewhere,
at artificially inflated prices;

g.   exchanging information, in California and elsewhere, on prices for TFT-LCD
Panels sold to HP and other customers for the purpose of monitoring and enforcing
adherence to the illegal agreements; and

h.   providing false statements to the public, in California and elsewhere, to explain
increased prices for TFT-LCD Panels.

102.   As a direct result of the unlawful conduct of Defendants and their co-conspirators
and the illegal agreements alleged above, HP was damaged in its business and property in that,
during the Conspiracy Period, it purchased TFT-LCD Panels from Defendants and their co-
conspirators and paid more for TFT-LCD Panels than it would have in the absence of Defendants'
and their co-conspirators' illegal price-fixing.

103.   To the extent that any of the purchases of TFT-LCD Panels by HP are found to be
indirect purchases, HP is entitled to recover damages based on such purchases pursuant to this
action.

104.   As a result of Defendants' violation of the California Business & Professions Code
§§ 16700 et seq., HP is entitled to treble damages and costs of suit, including reasonable
attorneys' fees, pursuant to Section 16750(a).

105.   HP has sustained actual damages of over $1,000,000,000, with an exact amount to
be determined at trial.

/ / /

/ / /

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-25-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

## VII.   THIRD CAUSE OF ACTION
### (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.)

106.   HP incorporates by reference paragraphs 1 through 105 of this Complaint, as though fully set forth in this paragraph.

107.   HP is informed and believes, and thereon alleges, that Defendants committed and continued to commit acts of unfair competition, as defined in California Business & Professions Code §§ 17200 et seq., by engaging in the acts or practices specified in paragraphs 1 through 106 above.

108.   This Complaint is filed, and these proceedings are pursuant to Sections 17203 and 17204 of the California Business & Professions Code, to obtain restitution from Defendants of all revenues, earnings, profits, compensation, and benefits which they obtained as a result of their unlawful, unfair, and fraudulent conduct.

109.   The unlawful, unfair, and fraudulent business practices of Defendants, as alleged above, injured HP and members of the public in that Defendants' conduct restrained competition, causing HP and others to pay supra-competitive and artificially inflated prices for TFT-LCD Panels.

     a.  <u>Defendants' Unlawful Business Practices</u>:  As alleged, Defendants violated Section 1 of the Sherman Act and the California Cartwright Act by entering into and engaging in a continuing unlawful trust in restraint of trade and commerce. Defendants illegally conspired, combined, and agreed to fix, raise, maintain, and/or stabilize prices, and to restrict the output of TFT-LCD Panels.

     b.  <u>Defendants' Unfair Business Practices</u>:  As alleged above, Defendants violated Section 1 of the Sherman Act and the California Cartwright Act by entering into and engaging in a continuing unlawful trust in restraint of trade and commerce. Defendants illegally conspired, combined, and agreed to fix, raise, maintain, and/or stabilize prices, and to restrict the output of TFT-LCD Panels.

///

CROWELL
& MORING LLP
ATTORNEYS AT LAW

c.   <u>Defendants' Fraudulent Business Practices</u>:  As alleged above, Defendants took affirmative actions to conceal their collusive activity by keeping meetings with co-conspirators secret and making false public statements about the reasons for artificially inflated prices of TFT-LCD Panels.  Members of the public were likely to be deceived, and HP was in fact deceived by Defendants' fraudulent actions.  As a result of Defendants' unfair competition, HP suffered injury in fact and has lost money or property.

110.   Accordingly, in addition to other relief, HP is entitled to restitution and injunctive relief to address the illegal conduct alleged herein.

111.   HP has sustained actual damages of over $1,000,000,000, with an exact amount to be determined at trial.

## VIII.   FOURTH CAUSE OF ACTION
**(VIOLATION OF THE TEXAS FREE ENTERPRISE AND ANTITRUST ACT, TEX. BUS. & COM. CODE §§ 15.01 ET SEQ.)**

112.   HP incorporates by reference paragraphs 1 through 111 of this Complaint, as though fully set forth in this paragraph.

113.   Beginning at least as early as January 1, 1996 and continuing through at least December 11, 2006, the exact dates being unknown to HP, Defendants and their co-conspirators entered into a continuing agreement, combination, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for TFT-LCD Panels in Texas and elsewhere, in violation of the Texas Free Enterprise and Antitrust Act of 1983 (Tex. Bus. & Com. Code §§ 15, et. seq.).

114.   HP is informed and believes, and thereon alleges, that in formulating and carrying out the alleged agreement, combination, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including:

a.   participating in meetings and conversations, in Texas and elsewhere, to fix, raise, maintain, and/or stabilize the price of TFT-LCD Panels;

/ / /

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1      b.  communicating in writing, in Texas and elsewhere, to fix, raise, maintain, and/or

2           stabilize the price of TFT-LCD Panels;

3      c.  restricting supply of TFT-LCD Panels in order to artificially inflate the price of

4           TFT-LCD Panels;

5      d.  issuing price announcements and price quotations, in Texas and elsewhere, in

6           accordance with illegal conspiratorial conduct;

7      e.  negotiating and entering into agreements with HP in Texas to sell TFT-LCD

8           Panels at artificially inflated prices;

9      f.  selling TFT-LCD Panels to HP and other customers, in Texas and elsewhere, at

10          artificially inflated prices;

11     g.  exchanging information, in Texas and elsewhere, on prices for TFT-LCD Panels

12          sold to HP and other customers for the purpose of monitoring and enforcing

13          adherence to the illegal agreements; and

14     h.  providing false statements to the public, in Texas and elsewhere, to explain

15          increased prices for TFT-LCD Panels.

115. As a direct result of Defendants' and their co-conspirators' illegal agreements alleged above, price competition in the sale of TFT-LCD Panels has been restrained, suppressed, and/or eliminated in Texas and elsewhere. HP was damaged in its business and property in that, during the Conspiracy Period, HP purchased TFT-LCD Panels from Defendants and their co-conspirators and paid more for TFT-LCD Panels than it would have in the absence of Defendants' and their co-conspirators' illegal price-fixing.

116. As a result of Defendants' willful and flagrant conduct in violation of Texas Business & Commerce Code §§ 15 et seq., HP is entitled to treble damages and costs of suit, including reasonable attorneys' fees, pursuant to Section 15.21(a)(1).

117. HP has sustained actual damages of over $1,000,000,000, with an exact amount to be determined at trial.

/ / /

/ / /

CROWELL & MORING LLP
ATTORNEYS AT LAW

-28-

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; CASE NO. 10 CV 5577 SI

## IX.   PRAYER FOR RELIEF

WHEREFORE, HP demands judgment against Defendants as follows:

118.   On the First Cause of Action:

    a.   A declaration that the unlawful combinations, agreements, and conspiracies alleged herein were a <u>per se</u> violation and an unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1);

    b.   An injunction enjoining Defendants from continuing the unlawful combinations, agreements and conspiracies alleged herein;

    c.   An award of damages, as provided by law, and joint and several judgment in favor of HP against Defendants in an amount to be trebled in accordance with the antitrust laws;

    d.   An award for the costs of this suit (including expert fees), and reasonable attorneys' fees, as provided by law;

119.   On the Second Cause of Action:

    a.   A declaration that the unlawful combinations, agreements, and conspiracies alleged herein were a <u>per se</u> violation and an unreasonable restraint of trade and commerce in violation of Sections 16700 et seq. of the California Business & Professions Code;

    b.   An injunction enjoining Defendants from continuing the unlawful combinations, agreements and conspiracies alleged herein;

    c.   An award of damages, as provided by law, and joint and several judgment in favor of HP against Defendants in an amount to be trebled in accordance with the antitrust laws;

    d.   An award for the costs of this suit (including expert fees), and reasonable attorneys' fees, pursuant to Section 15750(a) of the California Business & Profession Code;

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-29-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

120.     On the Third Cause of Action:

    a.   An award for equitable relief in the form of restitution and/or disgorgement of all revenues, earning, profits, compensation, and benefits which were obtained in violation of Sections 17200 et seq. of the California Business & Professions Code;

    b.   An award for costs of suit;

121.     On the Fourth Cause of Action:

    a.   A declaration that the unlawful combinations, agreements, and conspiracies alleged herein were a per se violation and an unreasonable restraint of trade and commerce in violation of the Texas Free Enterprise and Antitrust Act of 1983, Tex. Bus. & Com. Code § 15.05;

    b.   An injunction enjoining Defendants from continuing the unlawful combinations, agreements and conspiracies alleged herein;

    c.   An award of damages, as provided by law, and joint and several judgment in favor of HP against Defendants in an amount to be trebled in accordance with the antitrust laws;

    d.   An award for the costs of this suit (including expert fees), and reasonable attorneys' fees, as provided by law; and

///

1    An award for such other and further relief as the nature of this case may require or as the

2   Court deems just, equitable, and proper.

3   Dated:  December 6, 2010                    CROWELL & MORING LLP

4

5                                              Gregory D. Call
                                               Beatrice B. Nguyen
6                                              Suzanne E. Rode

7                                    BARTLIT BECK HERMAN PALENCHAR &
                                               SCOTT LLP
8                                              Fred Bartlit, Jr.
                                               Mark E. Ferguson
9                                              Karma Giulianelli
                                               Lester Houtz
10                                             Mark Ouweleen
                                               Bryan Leach

11                                   Attorneys for Plaintiff Hewlett-Packard Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-31-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

1

## X.   DEMAND FOR JURY TRIAL

2       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, HP demands a trial by jury

3   of all the claims asserted in this Complaint so triable.

4   Dated:  December 6, 2010                         CROWELL & MORING LLP

5

6                                                    Gregory D. Call
                                                     Beatrice B. Nguyen
7                                                    Suzanne E. Rode

8                                          BARTLIT BECK HERMAN PALENCHAR &
                                                     SCOTT LLP
9                                                    Fred Bartlit, Jr.
                                                     Mark E. Ferguson
10                                                   Karma Giulianelli
                                                     Lester Houtz
11                                                   Mark Ouweleen
                                                     Bryan Leach
12
                                          Attorneys for Plaintiff Hewlett-Packard Company
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-32-

COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF;
CASE NO. 10 CV 5577 SI

# EXHIBIT A

# Exhibit A

1.  Compal Electronics, Inc.

2.  Flextronics International Limited

3.  Innolux Display Corporation

4.  Inventec Corporation

5.  LiteOn Technology Corporation

6.  Qisda Corporation (f/k/a Acer Peripheral and Ben Q Corporation)

7.  Quanta Computer Inc.

8.  Tatung Company

9.  TPV Technology Limited

10. Wistron Corporation